**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**Attorney for Plaintiff**
*- additional counsel on signature page -*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLARD WORKMAN, Individually and On Behalf of All Others Similarly Situated, | ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| NAMASTE TECHNOLOGIES INC., SEAN DOLLINGER, PHILIP VAN DEN BERG and KENNETH NGO, | ) ) ) ) ) |
| Defendants. | ) ) |

**Case No.:**

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**JURY TRIAL DEMANDED**

Plaintiff Willard Workman ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange

-1-

Commission ("SEC") filings, wire and press releases published by and regarding Namaste Technologies Inc. ("Namaste" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Namaste securities between November 29, 2017 and October 4, 2018, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Namaste, through its subsidiaries, operates as a cannabis e-commerce company. The company retails vaporizers and smoking accessories through e-commerce sites in 26 countries. It is also involved in the product design and manufacturing activities; and distribution of medical cannabis products.

3. On November 28, 2017, Namaste announced that it had signed a stock purchase agreement to sell its wholly owned US subsidiary, Dollinger Enterprises US Inc.

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance

policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Namaste failed to disclose that it had sold its wholly-owned U.S. subsidiary to Namaste executives; (ii) consequently, Namaste did not sell its U.S. subsidiary in an arm's length transaction; and (iii) as a result, Namaste's public statements were materially false and misleading at all relevant times.

5.   On October 4, 2018, Citron Research ("Citron") published an article entitled "Namaste: Citron has exposed complete FRAUD that underpins the 'Business' of Namaste," stating that the Company had entered into an "undisclosed related party" transaction. The Citron report alleged, among other issues, that Namaste's Chief Executive Officer had falsely "promised investors as Nasdaq listing" and had falsely represented that Namaste had divested the Company of its U.S. assets in a sale to an "arm's length" purchaser, when the purchaser was in reality a Namaste executive.

6.   Following publication of the Citron report, Namaste's stock price fell $0.19 per share, or roughly 10.5% over the next two trading days, to close at $1.62 per share on October 5, 2018.

7.   As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **JURISDICTION AND VENUE**

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

10.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

11.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

12.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Namaste securities during the Class Period and was economically damaged thereby.

13.      Defendant Namaste operates as a cannabis e-commerce company with e-commerce sites in 26 countries. Namaste is incorporated and has its principal executive offices in Canada. Namaste's common stock trade on the over-the-counter ("OTC") under the ticker symbol "NXTTF."

14.     Defendant Sean Dollinger ("Dollinger") has served as the Company's Chief Executive Officer ("CEO") during the Class Period.

15.     Defendant Philip van den Berg ("van den Berg") served as the Company's Chief Financial Officer ("CFO") from around October 2016 until June 2018.

16.     Defendant Kenneth Ngo ("Ngo") has served as the Company's CFO since June 2018. Ngo served as the Company's corporate controller from April 2018 until June 2018.

17.     The Defendants referenced above in ¶¶ 14-16 are sometimes referred to herein as the "Individual Defendants."

18.     The Individual Defendants possessed the power and authority to control the contents of the Company's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Namaste, through its subsidiaries, operates as a cannabis e-commerce company. The company retails vaporizers and smoking accessories through e-commerce sites in 26 countries. It is also involved in the product design and manufacturing activities; and distribution of medical cannabis products.

### Materially False and Misleading
### Statements Issued During the Class Period

20.     The Class Period begins on November 28, 2017, when Namaste issued a press release entitled, "Namaste Divests US Assets to Focus on Legal Cannabis Markets and Announces Conference Call," announcing that it had signed a stock purchase agreement to sell its wholly owned US subsidiary, Dollinger Enterprises US Inc. The press release stated, in relevant part:

> Vancouver, British Columbia, Canada - Namaste Technologies Inc. ("Namaste" or the "Company") (CSE:N) (OTC:NXTTF) (FRANKFURT:M5BQ) is pleased to announce that it has signed a stock purchase agreement (the "Agreement") with ESC Hughes Holdings Limited ("ESC") to sell the Company's wholly owned US subsidiary, Dollinger Enterprises US Inc. ("Dollinger US"). The Agreement includes the sale of the domain names Everyonedoesit.com and NamasteVapes.com which combined represent less than 7% of Namaste's current gross revenue, both of which are currently operating at a net loss. Due to the political uncertainty surrounding the legalization of cannabis in the US, Namaste's management has deemed it appropriate to shift its focus to legal cannabis markets and management believes that the Company will be better aligned with its long-term interests by divesting its US operations. Management also feels it is prudent to divest these assets in preparation for the legalization of both medical and recreational marijuana in Canada. This decision better aligns Namaste with many of its Canadian counterparts and

will enable the Company to capitalize on more accretive opportunities moving forward.

Under the terms of the Agreement, Namaste will, through its wholly owned subsidiary, Namaste Technologies Holdings Inc., in consideration of a cash purchase price of US $400,000, convey to ESC the following:

- All authorized and issued shares of Dollinger US
- NamasteVapes.com and Everyonedoesit.com domains
- All banking, merchant, and services accounts
- Five employees of Dollinger US
- One real estate lease held under Dollinger US

Payment of US $100,000 will be received on closing, with the balance of the purchase price being paid at a monthly rate of US $25,000 until paid in full, with payments commencing on January 1, 2018. Closing is expected to occur on or about December 4, 2017.

Although many US states have established some form of medical and/or recreational cannabis legalization, the US federal government remains firm on its position regarding cannabis prohibition. Namaste feels this uncertainty may pose challenges in both the short and medium term and restrict growth opportunities in more progressive markets. Under the terms of this Agreement, Namaste will retain all of its existing database of over 520,000 US consumers, and intends on leveraging that data once US federal legalization is in place.

*    *    *

**Conference Call**

Namaste will be holding a conference call at 8:30 a.m. on Wednesday, November 29, 2017 to discuss and answer questions regarding the above news. The call will be led by Namaste's CEO, Sean Dollinger.

*    *    *

**Management Commentary**

Sean Dollinger, President and CEO of Namaste comments: "In light of recent trends, Namaste is extremely excited at the potential for additional growth opportunities in more progressive markets. As a result of this divestiture, Namaste believes it has set the stage to fully exploit any and all opportunities that present themselves within legalized marijuana markets globally. Our decision to divest these US assets is strategic in nature and

sets the stage for greater expansion of our e-commerce platform. Namaste believes its future success will be achieved through organic growth, in addition to forming strategic alliances. We also believe this divestiture will lead the Company to profitability in a much shorter time-frame."

21.     The following day, November 29, 2017, Namaste held a conference call to discuss and answer questions regarding the sale of Dollinger Enterprises US Inc. During the call, Hollinger stated the transaction was at arms-length:

[Question:] ***and the buyers [of Dollinger Enterprises US] are arm's length, are they?***

[Dollinger]: ***Absolutely! It's a group out of Europe who's been interested and we don't feel they're a threat if do need to re-enter into the U.S. So we needed to make sure, there were a lot of people who were interested, due to the names of the websites, etc., so we did have to make a strategic decision on who we sold to."***

(Emphasis added.)

22.     On February 20, 2018, Namaste filed a short form prospectus with the Canadian Securities Exchange. The prospectus was signed by Defendants Dollinger and van den Berg. The prospectus described the sale of Namaste's U.S. subsidiary, stating in relevant part:

On December 31, 2017, the Company completed the sale of Dollinger Enterprises US Inc., a wholly-owned US subsidiary, to ESC Hughes Holdings Limited, for cash consideration of USD$400,000. USD$100,000 was received on closing, with the balance of the purchase price to be paid in monthly instalments of USD$25,000. The sale represented the divestiture of the domains, everyonedoesit.com and namastevapes.com, which accounted for less than 7% of the Company's gross revenues and operated at a loss.

-8-

23.    The statements contained in ¶¶ 20-22 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Namaste failed to disclose that it had sold its wholly-owned U.S. subsidiary to Namaste executives; (ii) consequently, Namaste did not sell its U.S. subsidiary in an arm's length transaction; and (iii) as a result, Namaste's public statements were materially false and misleading at all relevant times.

## **The Truth Begins To Emerge**

24.    On October 4, 2018, Citron Research published an article entitled, "Namaste: Citron has exposed complete FRAUD that underpins the 'Business' of Namaste," stating that the Company had entered into an "undisclosed related party" transaction. The article stated, in relevant part:

> To keep this simple and to the point, lets go right into indefensible <u>FRAUD #1</u>
>
> Fake claim of a Nasdaq Listing to get investors to buy the stock.
>
> Mr. Dollinger has promised investors a Nasdaq listing and the simple takeaway that comes with it, a higher share price on the back of an up-listing.
>
> In our previous report, we explained that the NASDAQ would laugh Dollinger out of the room given his seedy background and the company's opaque finances. So what did Mr. Dollinger turn around and do... nothing crazy, just committed an act of securities fraud. A video is worth 2k words.

https://www.youtube.com/watch?v=MvFEkvgyHAE

For those who don't want to watch the video, here is a highlight from the transcript.

> *"Let's look at our accomplishment of being accepted to one of the largest stock exchanges in the world*, and not only entering on the lowest tier, we've been accepted on the second tier due to our requirements. *Don't think that the Nasdaq* just takes an application and takes a payment and my happy at the end of the day. *They went through our books,* they went absolutely everything for 6 weeks, we've been working around the clock from the time that I went on your show and called out on our shareholders and investors for support and let's get to that $3.50 mark." Sean Dollinger from Namaste 420 Weekly Update July 25, 2018 **

\*    \*    \*

### Fraud #2: Undisclosed Related Party Sale with Proof

With the hope of obtaining the NASDAQ listing on Nov 28, 2017, Namaste announced that it divested of its US assets, Dollinger Enterprises US Inc.

"with our LP sales license knocking on our doorstep, Namaste management has decided that it would be best for our shareholders to divest the company of our US assets...With the US's federal government stance on marijuana and the current federal legislation in the US, Namaste management believes this is a strategic decision which will allow the company to explore new opportunities." --- Sean Dollinger, Nov 28, 2017 Call

Citron asks, "Who in the world would want to buy a money hemorrhaging online vape business from Namaste?"

In a direct response to that simple question, Sean Dollinger replied:

"[Question:] *and the buyers are arm's length, are they? [Sean]: absolutely! It's a group out of Europe*" Sean Dollinger, Nov 28, 2017 Call

Namaste allegedly sold these assets for US$400k to ESC Hughes Holding Limited. The terms were $100k down and $25k a month (which we do have any record of being paid).

*A simple corporate search will illustrate that the purchaser is out of Ireland is not a third party, but rather none other than Namaste executive David Hughes.*

Here is the signed version of the same document.

http://search.sunbiz.org/Inquiry/CorporationSearch/ConvertTiffToPDF?storagePath=COR%5C2018%5C0419%5C11995491.Tif&documentNumber=P16000017747

Namaste Executive (David Hughes) Bought Dollinger Enterprises. And just in case, you believe his name is a coincidence, you will see that the other signatory on the document is none other than is Paul Burns, the HR Manager at Namaste (LinkedIN).



**Paul Burns** • 3rd

HR Manager at Namastetechnoligies

Ireland

Just to be clear, ***Dollinger said he sold this asset to an arm's length party . . . but it was really sold to David Hughes who has been with Namaste since Feb 2015 (and Paul Burn who has been with Namaste since 2016)*** – can investors trust anything Dollinger says going forward?

Namaste has lied to its shareholders, Canadian Regulators, US Regulators; and most of all has attempted to hide US assets from the Justice Department in an attempt to obtain a US listing.

*Citron's theory makes this a criminal offense.*

Could it be possible that Namaste gave away revenues of owning Dollinger but not the costs? In other words, could they be stealing money from the company?

In explaining the stated transaction from a financial viewpoint, Dollinger stated: "By selling our US arm, not only will we be selling it at fair market value, which will give our company positive cash flow for the next twelve months, but the removal of the division will allow us to become profitable by the summer of 2018." <u>Sean Dollinger, Nov 28, 2017</u>

Yet, despite claims that Namaste removed the majority of its losses, Namaste somehow managed to pile up larger losses than the prior year.

| 9 Month Ended Results | |
| --- | --- |
| Net Loss (May 31, 2017) | ($6,909,390) |
| Remove the Majority of Losses (Assume 50.1%) | ($3,461,604) |
| **Implied Net Loss (May 31, 2018)** | **($3,447,786)** |
| | |
| Actual Net Loss (May 31, 2018) | ($14,543,419) |
| **Incremental Loss** | **($11,095,633)** |

With $2.6 million in inexplicable consulting fees, Citron believes that Namaste is paying out large sums of cash to what might be undisclosed related parties.

*       *       *

(Emphasis added.)

25.    On this news, shares of Namaste fell $0.19 per share or nearly 10.5% over the next two trading days to close at $1.62 per share on October 5, 2018.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

26.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Namaste securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

27.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Namaste securities were actively traded on the OTC. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Namaste or its

transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

30.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Namaste;

- whether the Individual Defendants caused Namaste to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Namaste securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

Class Action Complaint for Violation of the Federal Securities Laws

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

31.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

32.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Namaste  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded OTC and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Namaste securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

33.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

34.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

35.     Plaintiff repeats and reallege each and every allegation contained above as if fully set forth herein.

36.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

37.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed

devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Namaste securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Namaste securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

38. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Namaste securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Namaste finances and business prospects.

39. By virtue of their positions at Namaste , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and

misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

40.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Namaste, the Individual Defendants had knowledge of the details of Namaste internal affairs.

41.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Namaste. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Namaste businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Namaste securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Namaste business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Namaste securities at artificially inflated prices and relied upon the

price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

42.    During the Class Period, Namaste securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Namaste securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Namaste securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Namaste securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

43.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

44.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period,

Class Action Complaint for Violation of the Federal Securities Laws

upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

45.    Plaintiff repeats and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46.    During the Class Period, the Individual Defendants participated in the operation and management of Namaste, and conducted and participated, directly and indirectly, in the conduct of Namaste business affairs.  Because of their senior positions, they knew the adverse non-public information about Namaste misstatement of income and expenses and false financial statements.

47.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Namaste financial condition and results of operations, and to correct promptly any public statements issued by Namaste which had become materially false or misleading.

48.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Namaste disseminated in the marketplace during the Class Period concerning Namaste results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Namaste

to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Namaste within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Namaste securities.

49.    Each of the Individual Defendants, therefore, acted as a controlling person of Namaste.  By reason of their senior management positions and/or being directors of Namaste, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Namaste to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Namaste and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

50.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Namaste.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: October 22, 2018                            Respectfully submitted,

                                                   **POMERANTZ LLP**

                                                   */s/ Jennifer Pafiti*
                                                   Jennifer Pafiti (SBN 282790)
                                                   468 North Camden Drive
                                                   Beverly Hills, CA 90210
                                                   Telephone: (818) 532-6499
                                                   E-mail: jpafiti@pomlaw.com

                                                   **POMERANTZ LLP**
                                                   Jeremy A. Lieberman
                                                   J. Alexander Hood II
                                                   600 Third Avenue, 20th Floor
                                                   New York, New York 10016
                                                   Telephone:  (212) 661-1100
                                                   Facsimile:  (212) 661-8665
                                                   Email:  jalieberman@pomlaw.com
                                                          ahood@pomlaw.com

Class Action Complaint for Violation of the Federal Securities Laws

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email:  peretz@bgandg.com

*Attorneys for Plaintiff*

Class Action Complaint for Violation of the Federal Securities Laws

**Submission Date**

2018-10-08 10:05:07

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.    I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Namaste Technologies Inc. ("Namaste" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Namaste securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Namaste securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Namaste securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury that the foregoing is true and correct.

## Name

**Print Name**

Willard Workman

## Acquisitions

**Configurable list (if none enter none)**

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
| --- | --- | --- |
| 10/3/2018 | 1182 | $1.68 |

## Sales

## Documents & Message

**Signature**



**Full Name**

Willard Workman

(redacted)

**Namaste Technologies Inc. (NXTTF)**                              **Workman, Willard**

**List of Purchases and Sales**

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 10/3/2018 | Purchase | 1,182 | $1.6800 |